UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------ X
DARRELL CLARK,
                           Petitioner,

- against -

SUPERINTENDENT HAROLD MCKINNEY,

                           Respondent.
------------------------------------------------------------ X

**MEMORANDUM
DECISION AND ORDER**

05-CV-5585 (BMC)

**COGAN, District Judge.**

      Petitioner, currently incarcerated at Fishkill Correctional Facility, was convicted by a jury of Robbery in the First Degree, Robbery in the Second Degree and Criminal Possession of a Weapon in the Fourth Degree on December 13, 2000. As a result, petitioner was sentenced to two concurrent determinate prison terms of 10 years and one concurrent determinate term of one year.

      On November 22, 2005, petitioner filed, *pro se,* the instant petition for a writ of habeas corpus.[1] The primary substantive issue presented in this petition is whether the state trial judge, upon receiving a note from the jury disclosing that it was having difficulty resolving conflicting stories in the prosecution's and the defendant's cases, committed constitutional error by failing to re-instruct on the burden of proof as part of his supplemental charge. Out of this claim arise two additional issues: whether petitioner received ineffective assistance of counsel, since trial counsel did not object to the trial judge's response to the jury question, and whether the petition is timely.

---

[1] Petitioner subsequently obtained counsel.

## BACKGROUND

### I. Procedural History

#### A. Petitioner's Direct Appeal

Upon conviction, petitioner timely filed an appeal raising the same jury instruction issue raised here. The Appellate Division declined to consider the claim, finding it to be unpreserved for appeal because defense counsel failed to object or submit an alternative instruction, and the Court of Appeals denied leave to appeal. People v. Clark, 298 A.D.2d 461, 748 N.Y.S.2d 272 (2d Dep't), leave to app. den., 99 N.Y.2d 556, 754 N.Y.S.2d 208 (2002).

#### B. Petitioner's First C.P.L. § 440.10 Motion

On March 11, 2003, petitioner moved *pro se* under N.Y. Criminal Procedural Law § 440.10 ("§ 440") for dismissal of the indictment against him on the grounds that (1) he was not afforded an opportunity to testify before the grand jury, a claim not relevant here; and (2) his trial counsel was ineffective for failing to consult with him and apprise him of the progress of the case. The court denied petitioner's motion without addressing the ineffective assistance of counsel claim. Petitioner sought leave to appeal the determination of the § 440 Court, arguing that the court erred in summarily denying his motion. He also improperly alleged further grounds for his ineffective assistance of counsel claim for the first time on appeal. Specifically, as is relevant here, he argued that counsel was ineffective for failing to object when the judge improperly instructed the jury after receiving the note. On September 8, 2003, without elaboration, the Appellate Division denied leave to appeal.

2

### C. Petitioner's Second C.P.L. § 440.10 Motion

Petitioner filed a second § 440 motion *pro se* on January 29, 2004, arguing that counsel rendered ineffective assistance of counsel by, *inter alia*, failing to object to the trial court's handling of the jury note. The § 440 Court again denied the motion holding that "[t]he factual grounds supporting the instant application were set forth in [petitioner's] previous CPL 440.10 motion." Petitioner sought leave to appeal this decision both to the Appellate Division and the Court of Appeals. Both were denied, on July 21, 2004 and September 22, 2004, respectively, with the Court of Appeals specifically stating that the Appellate Division's Order denying leave "is not appealable under Criminal Procedure Law, section 450.90(1)."

### D. Petitioner's Third C.P.L. § 440.10 Motion

Petitioner made one more attempt, *pro se*, to challenge his conviction in state court, filing a third § 440 motion on March 22, 2005. Petitioner argued that his counsel was ineffective for failing to object to the jury's note and that the trial court's supplemental instruction shifted the burden of proof. The court denied the motion on March 30, 2005, holding that petitioner's "claims are both without merit and specifically addressed in his appeal." Leave to appeal was denied on October 12, 2005.

He filed the instant petition on November 22, 2005.

## II. Trial

The State argued at trial that on March 31, 2000, petitioner and an unapprehended accomplice stole property from the Midnight Rambler Trucking Company ("Midnight Rambler"), located in a warehouse in Jamaica, Queens. While petitioner removed the property, his accomplice waited in a getaway van. Todd Kuse ("Kuse"), an employee of

3

Midnight Rambler, caught petitioner removing the property and initially attempted, unsuccessfully, to pull the accomplice from the waiting van. When the accomplice drove off, Kuse confronted petitioner, who threatened Kuse with a box cutter and then assaulted him with a tire. Petitioner tried to flee to a nearby warehouse, but employees there detained him until the police arrived. Kuse testified at trial and identified petitioner as the perpetrator.

In his defense, petitioner testified that while walking home late at night he saw Kuse arguing with a man driving a van while another man ran away. Petitioner then saw the van driver push Kuse away from the car and drive away. Petitioner testified that at this point Kuse turned on him, threatening him with rocks and accusing him of being one of the robbers. Petitioner pulled out a box cutter for protection, but never waived it at Kuse.[2] Kuse, now accompanied by two others, threatened petitioner with a rock and a stick. Petitioner ran away, dropping his knife, grabbing a tire for protection and ultimately running into a warehouse where he was detained until the police arrived.

During deliberations, the jury sent a note to the trial judge that he described in the following exchange with counsel:

> THE COURT: We have received another jury note. It is a somewhat confusing note. I showed it to both attorneys off the record. The note says, based on the facts presented by the prosecution's case, we came to one conclusion. Period. Based on the defendant's own testimony, our decision has completely changed. Period. Can this be a proper procedure for a jury to follow?
>
> Now, I think the only answer I can give them is, whatever you do in the jury deliberation room you have a duty to consult with one another, to talk to each other with a view toward reaching an agreement. However, we have no business in deciding what's going on, we have no business

---

[2] Petitioner testified that the yellow box cutter recovered by police at the scene was not his; he said that he had a grey box cutter, which he carried with him for work purposes.

4

> interfering with whatever procedure they wish to follow in the jury deliberation room. Does that make sense or am I as bad as they are?
>
> [THE PROSECUTOR]: Sounds fine.
>
> [DEFENSE COUNSEL]: As I indicated previously, I don't know while the trial was going on they reached an opinion or --
>
> [THE COURT]: I think it's deliberations. It's got to be deliberations. Probably sitting there discussing the different --
>
> [DEFENSE COUNSEL]: All right

(T: 373-74). The court then instructed the jury as follows:

> We have received your latest note. It says, based on the facts presented by the prosecution's case, we came to one conclusion. Based on the [petitioner's] own testimony, our decision has completely changed this. Can this be a proper procedure for a jury to follow?
>
> Now, I am a little uncertain as to what you're asking, but whatever happens in the jury deliberation room is for you to decide. You decide what procedure you follow. You could go over the prosecution's case, the defendant's case. You can do the defendant's case first. Anyway you want. I have no right to tell you how to do that.
>
> You do have a duty to consult with each other. Somebody can't just sit in the corner and play cards, play solitaire. You have a duty to consult with one another and reach an agreement. That's the law. That's all. That's as far as I can interfere. Everything else is strictly within your province.
>
> You are the sole and exclusive judges of the facts. You should be wearing robes at this point as judges because you are the judge's of the facts. Okay?
>
> So that's the answer to the question. The answer is, yes, any procedure you wish to follow is fine with us.

(T: 375-76).

The jury sent no further notes and rendered its verdict the next day.

## DISCUSSION

The parties' divergent reading of this exchange forms the basis of this petition. According to respondent, the jury's question simply went to the methodology of its

deliberations, an issue that the trial judge put back in the jurors' collective lap by telling them that the mechanism for deliberating was up to them. Based on the trial judge's comments to counsel and the manner in which he instructed the jury, it seems clear that that is how he interpreted the note, and made his response accordingly.

According to petitioner, the jury was either confused as to the burden of proof, or if it was not, it became so as a result of the trial judge's answer to the jury's question. Petitioner thus contends that the trial judge "shifted the burden of proof to the defense." (Petitioner's Memorandum at Point II).[3] Although petitioner recognizes that the trial judge adequately instructed the jury on the burden of proof in its main charge, he contends that the trial court's failure "to reiterate this concept at a critical juncture in the proceedings, when the jury was struggling with the two versions of the events that had been presented," id., deprived petitioner of due process.

Because the issues raised here were raised either on direct appeal or in petitioner's § 440 motions and were appealed as far as possible in state court, they are exhausted for purposes of habeas review. However, as discussed in detail below, the Court finds that the petition is time-barred and, in any event, meritless.

## I. Standard of Review

Pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, I review petitions for habeas corpus by a prisoner in state custody in accordance with the deferential standard codified at 28 U.S.C. § 2254(d):

---

[3] There are no page numbers in petitioner's Memorandum.

6

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A state court has adjudicated a claim on the merits when "it disposes of the claim and reduces its disposition to [a] judgment" that either "fairly appear[s] to rest primarily on federal law or to be interwoven with federal law" and does not rest on "a clear and express statement of reliance on a state procedural bar." Jimenez v. Walker, 458 F.3d 130, 145-46 (2d Cir. 2006). Thus, I will only give AEDPA deference to those claims that were adjudicated on the merits in state court proceedings.

## II. Equitable Tolling

Under the AEDPA, a prisoner in state custody must file a habeas corpus petition within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review." 28 U.S.C. § 2244(d)(1). However, "'[t]he time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward' this one year period." Hizbullahankhamon v. Walker, 255 F.3d 65, 69 (2d Cir. 2001) (quoting 28 U.S.C. § 2244(d)(2)). The statute of limitations is therefore tolled from the "'time [a properly filed application] is first filed until it is finally disposed of and

7

further appellate review is unavailable under the particular state's procedures." Id. at 70 (quoting Bennett v. Artuz, 199 F.3d 116, 120 (2d Cir. 1999).

An application for post-conviction relief is "properly filed" when the petitioner files for relief that is "recognized as such under governing state procedures.'" Id. at 70 (quoting Bennett, 199 F.3d at 123). Thus, if a petitioner applies for relief that is not available to him, the time period during which that unavailable relief application is pending will not toll the statute of limitations. See id. at 71-72 (finding that the petitioner's state post-conviction relief stopped pending after it was denied by the Appellate Division even though the petitioner sought leave to the Court of Appeals).

Petitioner does not dispute that he filed this petition 428 "chargeable" days after his conviction became final, outside the one-year statute of limitations imposed by 28 U.S.C. §2244(d)(1). In fact, petitioner filed this petition some two years and eight months after his conviction. In that time he managed to appeal his conviction directly, file three separate § 440 motions (in March, 2003, January, 2004 and March, 2005), and appeal each of those motions, albeit unsuccessfully. Because of his numerous filings, only 428 days of the nearly three years that elapsed are chargeable against the one-year statute of limitations.

Petitioner requests equitable tolling of a portion of those 428 days. "Because AEDPA's 'one-year period is a statute of limitations rather than a jurisdictional bar,' courts may equitably toll the period in appropriate cases." Jean-Louis v. Greiner, No. 02 Civ. 6326, 2003 U.S. Dist. LEXIS 5572, at *6 (S.D.N.Y. Apr. 3, 2003) (quoting Smith v. McGinnis, 208 F.3d 13, 17 (2d Cir. 2000) (per curiam). Under the doctrine of equitable tolling, this Court can deem petitions timely if "(1) extraordinary circumstances

prevented [the petitioner] from filing his petition on time; and (2) he acted with reasonable diligence throughout the period he seeks to toll." Lebron v. United States, No. 06 Civ. 5049, 2007 U.S. Dist. LEXIS 28953, at *10 (S.D.N.Y. Apr. 18, 2007) (quoting Baldayaque v. United States, 338 F.3d 145, 150 (2d Cir. 2003)).

Petitioner first asserts that his medical problems should equitably toll the statute of limitations. He also contends that he did not know, and should be excused from knowing, that under state law, it is not possible to seek leave to appeal the denial of a § 440 motion from the Court of Appeals when the Appellate Division has already denied leave to appeal. The additional days he spent on this fruitless endeavor is one reason he is outside the one-year statute of limitations. See Hizbullahankhamon, 255 F.3d at 69.

The first issue is easily disposed of. "To justify tolling, a petitioner must show that his . . . health problems left him unable to pursue his legal rights during the relevant time period." Jean-Louis, 2003 U.S. Dist. LEXIS 5572, at *7. Although petitioner has produced medical records showing a number of "sick days" during the nearly three years between his conviction and the filing of this petition, he was well enough to file three rounds of § 440 petitions, each one of which he sought leave to appeal and one of which he took all the way up (albeit improperly) to the Court of Appeals. He was thus not so infirm as to have been unable to file the boilerplate habeas corpus petition in this Court within the required limitations period. See Jean-Louis, 2003 U.S. Dist. Lexis 5572, at *9-10 (where court declined to equitably toll statute of limitations despite petitioner's multiple hospitalizations); Rhodes v. Senkowski, 82 F. Supp. 2d 160 (S.D.N.Y. 1999) (petitioner's kidney failure, hospitalizations, extreme headaches, fever, hypertension, depression, weight loss and fungal infections not sufficient to equitably toll statute of

limitations). There is also a four month period in which no medical records show any infirmity – long enough itself to have made the petition timely – which the petitioner generally claims is a result of "missing" records, but which is just as plausibly the result of a lack of disabling symptoms.

The issue thus really comes down to whether his demonstrated diligence in filing his numerous § 440 proceedings and other factors peculiar to his situation constitute an equitable basis for tolling his obligation to file.

The parties agree that since Congress could not have been clearer that it wants a one-year limitations period applied to habeas corpus petitions, petitioner must demonstrate "extraordinary circumstances" to warrant a toll. See Lebron, 2007 U.S. Dist. LEXIS 28953, at *10. Petitioner cites no factually analogous authority where a court sustained a toll. The main authority he has is a comment made by my colleague, Judge Gleeson, in an earlier hearing in this case before it was reassigned to me. There, Judge Gleeson noted the "whipsaw" effect of demanding exhaustion of state remedies, and then barring a habeas corpus petitioner because his one year expires while he is trying to exhaust without knowing that certain state court procedures are unavailable.

I agree with Judge Gleeson that it is a Scylla and Charybdis scenario that Congress has required convicted defendants to navigate under AEDPA, demanding not only familiarity with federal habeas corpus procedure but, as this case shows, the intricacies of state criminal appellate practice as well. But that is clearly what Congress intended to do, and there is no issue here, nor anywhere else, as to whether Congress lacked the power to so condition and limit the Great Writ. See Villanueva v. United States, No. 98 Civ. 1883, 1999 U.S. Dist. LEXIS 6878, at *4-5 (finding the AEDPA's

statute of limitations to be constitutional). I also note that in a number of cases, petitioners file a habeas corpus petition while they are still pursuing state court remedies, and then ask for a stay of the habeas corpus petition pending exhaustion – just in case their one year period might expire while they are in state court. See, e.g., King v. Phillips, No. 03 Civ. 6073, 2006 U.S. Dist. LEXIS 72113, at *3 (E.D.N.Y. Oct. 3, 2006). It is thus a burdensome but not impossible task that Congress has imposed on a petitioner seeking habeas corpus relief.

As petitioner concedes, the key period at issue here is the time he wasted trying to appeal to the New York Court of Appeals when he should have been filing in this Court. Petitioner points to his poor education, and periods of no or inadequate legal representation as explanations for his failure to adequately comply with the one-year time limit. This is thus a pure "ignorance of the law" case.

It does not constitute extraordinary circumstances for a defendant to not know that the Appellate Division's denial of leave to appeal is his last stop on a § 440 motion. See, e.g., Thomas v. Unger, No. 06 Civ. 6578, 2007 WL 539039, at *5 (E.D.N.Y. Feb. 15, 2007) (finding that petitioner's ignorance of the law was not an "extraordinary circumstance" to justify equitable tolling). Thus, petitioner's explanations are insufficient. Reasonable diligence would have allowed him to get a habeas corpus petition to federal court. There are therefore no grounds for a toll and the petition is deemed untimely for purposes of habeas review.

In any event, both claims are meritless.

### III. The Jury Question

#### A. Procedural Bar

As discussed above, the Appellate Division denied petitioner's jury instruction claim on direct appeal, finding it unpreserved for appellate review. Petitioner subsequently abandoned the claim until his third § 440 motion, which was denied on March 30, 2005. There the Court held that the claims were "both without merit and specifically addressed in his appeal." Since this was the first time the § 440 Court addressed the jury instruction claim, I find that the court is referring to the "direct appeal" decision of the Appellate Division. It is unclear, however, whether the § 440 Court is merely referencing that decision – thus adjudicating the claim on the merits – or expressly relying on that decision – i.e. finding it meritless *and* unpreserved for appellate review as the Appellate Division did.[4] I find it unnecessary to make this determination since the claim is, in any event, meritless.[5]

#### B. The Merits

Petitioner argues that the Appellate Division violated clearly established law as interpreted by the Supreme Court in In re Winship, 397 U.S. 358, 90 S.Ct. 1068 (1970), when it affirmed the trial court's conviction and upheld the adequacy of the trial court's jury instructions. In Winship, the Supreme Court confirmed the well-established rule that

---

[4] "Unlike the situation where the state court holds that claims were either unpreserved or without merit, which the Second Circuit has found is usually too ambiguous to preclude habeas review," Murray v. Greene, 06 Civ. 3677, 2006 U.S. Dist. LEXIS 92341, at *53 (S.D.N.Y. Dec. 21, 2006), here the Appellate Division used the conjunctive "and" to separate the two conclusions, making the procedural bar determination unambiguous. Id.

[5] It should be noted that had the § 440 Court expressly relied on the Appellate Division's direct appeal decision, the claim would be procedurally barred because it was based on an independent and adequate state ground – the contemporaneous objection rule. See Jimenez, 458 F.3d at 136 (quoting Harris v. Reed, 489 U.S. 255, 260, 109 S.Ct 1038 (1989)). Since the contemporaneous objection rule is "firmly established and regularly followed," Cotto v. Herbert, 331 F.3d 217, 240 (2d Cir. 2003) (internal quotations omitted), when dealing with jury instruction objections, Hogan v. West, 448 F. Supp. 2d 496, 504 (W.D.N.Y. 2006), this claim would be barred from federal habeas review.

12

the "due process clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime . . . charged." Id. at 364, 90 S.Ct. at 1073. Petitioner claims that the trial court impermissibly shifted the burden of proof when it failed in its supplemental jury charge to re-instruct the jury that the prosecution bears the burden of proving every element beyond a reasonable doubt.

In order to succeed on this claim, petitioner must show "not merely that the [jury] instruction is undesirable, erroneous, or even 'universally condemned,' but that it violated some right which was guaranteed to [him] by the Fourteenth Amendment." Cupp v. Naughten, 414 U.S. 141, 146, 94 S.Ct. 396, 400 (1973). Moreover, it must be "reasonably likely" that the jury applied the instruction in a way that violated petitioner's rights. Estelle, 502 U.S. 62, 72, 112 S.Ct. 475, 482 (1991); Boyde v. California, 494 U.S. 370, 380, 110 S.Ct. 1190, 1198 (1990).

Petitioner's argument about "shifting the burden of proof" sometimes arises in the context of Allen-type or other supplemental charges based on inquiries by juries.[6] There are both similarities and differences between the exchange that is at issue here and an Allen situation. Although the jury was troubled as to how to balance conflicting evidence, which is at least partially true in an Allen situation, there is no indication from the communication that the jury was split or deadlocked; it appears to have been of one, albeit indecisive, mind. In addition, the trial judge's response to the note, although not even arguably as pointed as any form of Allen instruction, re-emphasized what he had

---

[6] "The term 'Allen charge' is a generic term used for a type of supplemental instruction that is given to a deadlocked jury, first approved by the Supreme Court in Allen v. United States, [164 U.S. 492, 17 S.Ct. 154 (1896)]." Spragion v. Smith, No. 04 Civ. 1880, 2005 WL 3535158, at *4 (E.D.N.Y. Dec. 23, 2005) (quoting Smalls v. Batista, 191 F.3d 272, 275 n. 1 (2d Cir. 1999)).

13

told the jury at the outset, namely, that they are the judges of the facts, adding that it was up to them to determine how to consider the evidence. Like an <u>Allen</u> instruction, he then sent the jury back to the deliberation room to try again.

Re-instruction on the burden of proof is not constitutionally compelled in a situation like this. Courts have rejected habeas claims for failure to re-instruct in more compelling cases, typically where an <u>Allen</u> charge sought to compel a verdict – unlike the response of the trial court here – but also where a jury asks questions that are much closer than this case to disclosing confusion over the burden of proof. <u>See, e.g.</u>, <u>United States v. Quintero-Barraza</u>, 78 F.3d 1344, 1350 (9th Cir. 1995) (explaining that while a burden of proof instruction in an <u>Allen</u> charge is helpful, it is not mandatory and "its absence 'is but one factor to be considered in assessing the coercive effect of the instruction as a whole.'") (quoting <u>United States v. Cuozzo</u>, 962 F.2d 945, 952 (9th Cir.), <u>cert. denied</u>, 506 U.S. 978, 113 S.Ct. 475 (1992)); <u>Gunn v. Kemna</u>, No. 05 Civ. 0632, 2005 WL 3078601 (W.D. Mo. 2005) (no re-instruction required despite argument that jury, by asking if the Court was going to tell them what defendant's alibi was, demonstrated confusion about burden of proof).

Here, the judge reasonably understood the jury note to be a question about the process of deliberations, not the shifting of burdens. The instructions correctly treaded lightly and avoided instructing the jury as to a specific method for deliberations. "Courts generally may not question jury members concerning any matter relating to jury deliberations other than the potential exposure of jury members to 'extraneous prejudicial information.'" <u>United States v. Snype</u>, 441 F.3d 119, 140 (2d Cir. 2005) (quoting Fed. R. Evid. 606(b)).

The issue here is whether, by telling the jury that "any procedure you wish to follow is fine with us," "whatever happens in the jury room is for you to decide," and giving the jury the option of considering either the prosecution or defendant's case first, the trial court may have eclipsed, in the jury's mind, the court's earlier instruction on the burden of proof, so as to necessitate re-instruction on that issue. I do not think such an inference is reasonably possible.

"The mere fact that an erroneous statement appears in a supplemental charge . . . does not automatically mean the jury has been unduly influenced by it." Rock v. Coombe, 694 F.2d 908, 915 (2d Cir. 1982). Any offending statement should be read in the totality of the court's instructions. Id. The main charge was thorough and detailed, both as to burden of proof and the definition of reasonable doubt. The trial court had explained that the burden "never shifts" from the prosecution as to every element of the crime. Burden of proof was again discussed in the charge on mental culpability and acting in concert.

In addition to these separate charges, the trial court reiterated the burden of proof and reasonable doubt requirements when it instructed on the elements of each crime. I cannot see any way that the jury would simply forget these admonitions as a result of the trial court's innocuous, indeed, rather meaningless, response to the jury's broad question about how to deal with conflicting evidence. See Duncan v. Fischer, 410 F. Supp. 2d 101, 114 (E.D.N.Y. 2005) (explaining that there is an "almost invariable assumption of the law that jurors follow their instructions.") (quoting Richardson v. Marsh, 481 U.S. 200, 206, 107 S.Ct. 1702, 1707 (1987). Taken in context, it is not "reasonably likely"

that the court's numerous burden of proof instructions were supplanted in the jurors minds by the supplemental charge. I therefore deny habeas corpus relief on this ground.

## IV. Ineffective Assistance of Counsel

Since the last state court to consider petitioner's ineffective assistance of counsel claim decided it on the merits, I review this claim under AEDPA deference.

As quoted above, petitioner's trial counsel failed to object to the trial court's response to the jury's question. Petitioner claims that this was ineffective assistance of counsel. Putting aside my ruling set forth above, the claim does not meet the test for ineffective assistance under Strickland, 466 U.S. 668, 104 S.Ct. 2052 (1984), for several reasons.

To succeed on his claim under Strickland, 466 U.S. at 686, 104 S.Ct. at 2064, petitioner would have to show that his lawyer's conduct "so undermined the proper functioning of the adversarial process" that the process "cannot be relied on as having produced a just result." Specifically, petitioner must show that "(1) his counsel's performance fell below an objective standard of reasonableness under prevailing professional norms and (2) he was prejudiced by counsel's deficient performance." Jones v. Conway, 442 F. Supp. 2d 113, 124 (S.D.N.Y. 2006). To meet the first prong, petitioner must overcome a strong presumption that the assistance was adequate. Strickland, 466 U.S. at 686, 104 S.Ct. at 2064. "To demonstrate prejudice, a petitioner must prove that, but for counsel's errors, there is a reasonable probability that the outcome of the proceeding would have been different." Jones, 442 F. Supp. 2d at 124.

Under this standard, petitioner's claim of ineffective assistance has no merit. The single alleged error must be considered in the totality of the circumstances, Diaz v.

16

Herbert, 317 F. Supp. 2d 462, 471 (S.D.N.Y. 2004), and measured against the weight of the evidence against petitioner and his attorney's active and meaningful conduct of the trial defense as a whole. See Brown v. Brown, No. 05 Civ. 10434, 2006 U.S. Dist. LEXIS 85306 (S.D.N.Y. Nov. 27, 2006) (explaining that counsel errors must be considered in the aggregate, giving "a heavy measure of deference to counsel's judgments") (quoting Strickland, 466 U.S. at 690-91, 104 S.Ct. at 2066).

First, even if re-instruction on the burden of proof was constitutionally required, it was not objectively unreasonable for defense counsel to have interpreted the jury's question in the same way as the trial court did—as going to the procedural method for deliberating without any implication as to changing the burden of proof on which the trial court had instructed the jury. Defense counsel meaningfully participated in the exchange with the court prior to the instruction being given. Counsel clarified with the court that the note did not imply that the jurors had made up their minds on factual issues prior to deliberating.

Second, when viewed in its totality, the record shows that trial counsel's representation of petitioner was aggressive and extremely able.

Third, there was substantial direct and circumstantial evidence of petitioner's guilt. The failure to object to the trial court's response to the jury question cannot, therefore, be said to have impacted the verdict. True, the jury note itself may suggest that the evidence was close. But it is more plausible that the jury's question arose from its initial approach, also apparent from the note, of considering each side's case in isolation. Petitioner ultimately had nothing but his story to contradict the evidence against him, and

the jury ultimately found him not credible when compared to the prosecution's case. Re-instruction on burden of proof would not likely have changed this.

Thus, petitioner has failed to satisfy either prong of <u>Strickland</u>. Considered in the totality of the circumstances, defense counsel did not commit error and even if his failure to object was error, it is not likely to have altered the outcome of the case.

## **CONCLUSION**

For the reasons set forth above, the Petition for Writ of Habeas Corpus is DISMISSED. As petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. 28 U.S.C. § 2253.

/Signed by Judge Brian M. Cogan/

**SO ORDERED.**

U.S.D.J.

Dated: Brooklyn, New York
July 23, 2007